**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MADELYN B., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 21-5183 (MAS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Madelyn B.'s ("Plaintiff")[1] appeal from the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her request for supplemental security income benefits and social security disability benefits. (Compl. ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court affirms the Commissioner's final decision.

**I.  BACKGROUND**

In this appeal, the Court must determine whether the Administrative Law Judge's ("ALJ") finding that Plaintiff had a residual functioning capacity ("RFC") to perform at least a range of sedentary work is supported by substantial evidence. The Court begins with the procedural posture and decision by the ALJ.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

A.      **Procedural History**[2]

Plaintiff filed applications for supplemental security income (SSI) and disability insurance benefits (DIB) in December 2017 and February 2018, alleging disability beginning on January 1, 2010. (AR 16, 244-67, 279.) Plaintiff's application was denied initially, and on reconsideration. (*Id.* at 168-77, 184-86.) Thereafter, Plaintiff had a hearing before the ALJ on January 3, 2020. (*Id.* at 34-82, 190-94.) At the hearing, Plaintiff amended her alleged disability onset date to December 18, 2017. (*Id.* at 40-42.) Following the hearing, the ALJ issued a decision dismissing Plaintiff's DIB application and denying her SSI application. (*Id.* 13-32.) Plaintiff appealed that decision, and the Administration's Appeals Council affirmed the ALJ's decision. (*Id.* at 1-7.) Plaintiff then filed an appeal to this Court. (*See generally* Compl., ECF No. 1.) On September 22, 2021, Plaintiff submitted her moving brief in this action. (ECF No. 12.) The Commissioner opposed (ECF No. 13), and Plaintiff replied (ECF No. 14).

B.      **The ALJ's Decision**

In his February 13, 2020 written decision, the ALJ concluded that Plaintiff was not disabled under the prevailing Administration regulations. (*See generally* AR 13-32.) The ALJ set forth the Social Security Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 17-18.) At step one, the ALJ found that Plaintiff "ha[d] not engaged in substantial gainful activity" during the relevant period. (*Id.* at 18.) At step two, the ALJ determined that Plaintiff had several severe impairments, including, fibromyalgia; asthma; bipolar disorder; post-traumatic stress disorder ("PTSD"); and attention-deficit hyperactivity disorder ("ADHD"). (*Id.* at 18-19.) Despite the ALJ finding some of Plaintiff's impairments severe, he

---

[2] The Administrative Record ("AR") is located at ECF Nos. 8 through 8-8. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

2

ultimately determined during his step-three analysis that those impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 19-21.) The ALJ then found that Plaintiff possessed the RFC to do the following:

> [P]erform sedentary work as defined in 20 CFR 416.967(a) except occasional climbing, balancing, stooping, kneeling, crouching, and crawling; frequent exposure to extreme cold and heat, wetness and humidity, dust, fumes, odors, and pulmonary irritants, and hazards such as unprotected heights and moving machinery. The claimant could perform unskilled work involving routine and repetitive tasks with occasional changes in the work setting; no quota or production-based work but rather-goal oriented work; and occasional interaction with coworkers, supervisors, and the public.

(*Id.* at 21.) At step four, the ALJ found Plaintiff had no past relevant work. (*Id.* at 26.) At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) The ALJ, consequently, found that Plaintiff was not under a disability from the filing date through the date of the decision. (*Id.* at 27.)

## II.   LEGAL STANDARD

### A.   Standard of Review

On appeal from the final decision of the Commissioner of the Social Security Administration, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by "substantial evidence." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence, however, "'may be somewhat less than a

preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation and internal quotation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is "supported by substantial evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citation omitted). An ALJ's fact-finding is not readily subjected to categorical rules separate and apart from the deferential substantial evidence test. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154-55 (2019). Instead, "[t]he inquiry . . . is case-by-case." *Id.* at 1157.

**B.   Establishing Disability**

To be eligible for disability and supplemental income benefits, a claimant must be unable to "engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4). The burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

For the first step, the claimant must establish that she has not engaged in any SGA since the onset of her alleged disability. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). For the second step, the claimant must establish that she suffers from a "severe . . . impairment" or "combination of impairments." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the first two steps are satisfied, the third requires the claimant to provide evidence that her impairment "meets or equals" an impairment listed in Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant demonstrates sufficient evidence under the third step, she is presumed to be disabled and is automatically entitled to disability benefits. *See id.* If she cannot so demonstrate, however, the eligibility analysis proceeds to step four. *See* 20 §§ C.F.R. 404.1520(e), 416.920(e).

Under the fourth step, the ALJ determines whether the claimant's RFC permits her to resume her previous employment. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can continue the work that she performed pre-impairment, then she is not "disabled" and not entitled to disability benefits. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot continue in this line of work, the analysis proceeds to step five. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work that is consistent with her RFC, age, education, and past work experience. *See id.*; *Malloy*, 306 F. App'x at 763. If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

### III. DISCUSSION

Plaintiff appeals the ALJ's written decision and raises four main arguments in support of remand or reversal. First, Plaintiff alleges the ALJ erred in finding Plaintiff's sleep apnea, narcolepsy, and irritable bowel syndrome non-severe. (Pl.'s Moving Br. 18-21, ECF No. 12.) Second, that the ALJ failed to include an off-task or absenteeism limitation in the RFC. (*Id.* at 25-26.) Third, the ALJ erred in his treatment of Plaintiff's practicing nurse's medical opinion as well as the opinions of the other medical consultants. (*Id.* at 21-25.) Finally, that the ALJ erred in failing to properly consider the sworn testimony of her live-in boyfriend and the third-party function report from her ex-husband. (*Id.* at 14-17.) The Court finds none of these arguments availing.

### A.   The ALJ Did Not Err in Accounting for Plaintiff's Non-Severe Medical Impairments

The Court first addresses Plaintiff's argument that the ALJ erred in finding Plaintiff's narcolepsy, sleep apnea, irritable bowel syndrome, and fibromyalgia non-severe.

The claimant bears the burden of establishing a severe impairment at step two. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A "severe impairment" is a condition that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). "An impairment (or combination of impairments) will not be severe if the evidence establishes a 'slight abnormality' with 'no more than a minimal effect on an individual's ability to work.'" *Vega v. Comm'r of Soc. Sec.*, No. 19-11399, 2021 WL 268174, at *3 (D.N.J. Jan. 27, 2021) (citing SSR 85-28).

Here, substantial evidence supports the ALJ's findings that Plaintiff's cited impairments were not severe. Regarding narcolepsy, the ALJ acknowledged that there were notes of narcolepsy in the record, but that Plaintiff's pulmonologist only classified it as a "rule out" diagnosis. (AR 503.) A "rule-out" diagnosis indicates that "there is reason to suspect" that the patient has the

6

condition but that "the doctor would not be comfortable giving such a diagnosis at that time" without additional evidence. *United States v. Grape*, 549 F.3d 591, 593 n.2 (3d Cir. 2008). Thereafter, Plaintiff's primary care nurse practitioner, Ms. Kathleen Palmer ("Nurse Palmer"), added the diagnosis to the treatment notes. But as discussed below, the ALJ found, and this Court agrees, that Nurse Palmer's medical opinions are less than persuasive. (AR 25.) In any event, Nurse Palmer specifically noted that her care for Plaintiff was limited to annual exams, sick visits and treatment for allergic rhinitis. (*Id.* at 674.)

Plaintiff next contends that the ALJ improperly found her sleep apnea to be non-severe. But the ALJ noted that the record indicated that Plaintiff received a CPAP machine to treat her sleep apnea, but she declined to use the treatment. (AR 505); 20 C.F.R. § 416.930 ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled"); *James v. Comm'r of Soc. Sec.*, No. 14-CV-4218, 2015 WL 4488027, at *15 (D.N.J. July 22, 2015) (finding the ALJ's determination was supported by medical evidence where the claimant "received a CPAP machine, but claimed that he remained unable to sleep through the night" but that "[n]o other medical evidence [was] provided regarding Plaintiff's sleep apnea and whether the CPAP ha[d] alleviated that condition.").

Moving next to Plaintiff's assertion that the ALJ erroneously found her inflammatory bowel syndrome and fibromyalgia to be non-severe, these arguments are easily dismissed. For one, the ALJ's written decision unequivocally finds Plaintiff's fibromyalgia to be severe. (AR 18-20.) As to irritable bowel syndrome, the ALJ found that the record only indicated that she had a history of irritable bowel syndrome—not a current diagnosis during the disability period. (*See id.* at 19.) The Court, accordingly, finds that the ALJ's step two findings were supported by substantial evidence.

### B. The ALJ Did Not Err in Failing to Assign Limitations for Off-Task and Absenteeism

Next, Plaintiff avers that the ALJ failed to assign proper limitations for off-task and absenteeism as part of his findings that Plaintiff had moderate limitations in mental functioning. Once again, review of the ALJ's written decision contradicts Plaintiff's assertion.

Plaintiff highlights that the vocational expert testified that an individual will be unable to maintain full-time competitive employment if the individual is off-task more than 10% of the workday, absent one or more days per month, or requires redirection a third of the workday. (Pl.'s Moving Br. 25-26.) But the ALJ was not required to incorporate that testimony because the RFC assessment did not include such a finding. *Ochs v. Comm'r of Soc. Sec.*, 187 F. App'x 186, 191 (3d Cir. 2006) (finding additional hypothetical questions not based on RFC were "inconsequential . . . the ALJ simply covered all his bases in questioning the vocational expert."). Ultimately, the responsibility for determining Plaintiff's RFC is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1546. The Court's review of the Commissioner's RFC determination is limited to ascertaining whether substantial evidence supports it. *See Richardson*, 402 U.S. at 401. Here, the RFC reflected that Plaintiff was able to maintain concentration and attention when on medication. (AR 20.) Furthermore, the ALJ's assigned RFC provided that Plaintiff could "perform unskilled work involving . . . no quota or production-based work but rather-goal oriented work." (*Id.* at 21.); *Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) ("the hypothetical individual 'would not have a quota to fulfill,' which accounts for [claimant]'s moderate difficulties with concentration, persistence, pace, and decompensation episodes." (internal citation omitted)). Consequently, the Court finds that the ALJ did not err in excluding off-task or absenteeism limitations in Plaintiff's RFC.

8

### C. The ALJ Did Not Err in Finding Plaintiff's Medical Provider's Opinion Less Persuasive

Plaintiff next argues that the ALJ erred in his treatment of the medical opinions from her primary care nurse practitioner, Nurse Kathleen Palmer, and the state agency medical consultants. Specifically, Plaintiff contends that Nurse Palmer's medical opinion should have been afforded greater weight. (Pl.'s Opp'n Br. 21-25.) Plaintiff is mistaken.

For claims filed after March 27, 2017, the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Nathaniel H. v. Kijakazi*, No. 20-3598, 2021 WL 5413981, at *6 n.7 (D.N.J. Nov. 19, 2021) (citing 20 C.F.R. § 404.1520c(a) (providing, among other things, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"), 416.920c(a) (same)).

With the proper standard framed, the Court next deals with Plaintiff's issue with the ALJ's finding that Nurse Palmer's medical assessment was "not persuasive." (*See* AR 25.) The Court disagrees with Plaintiff's assertion that the ALJ's finding was problematic. The ALJ's decision to give little weight to Nurse Palmer's opinion is well supported and explained. For example, Nurse Palmer noted that her care for Plaintiff was limited to annual exams, sick visits and treatment for allergic rhinitis. (AR 674.) Yet even with that limited window into Plaintiff's health, Nurse Palmer indicated that Plaintiff could sit for less than two hours during the day, and stand/walk less than six hours. (*Id.* at 679.) Nurse Palmer also indicated that she was "unable to assess" Plaintiff's ability to complete a "workweek without interruptions from psychologically based symptoms." (*Id.*) Moreover, the ALJ emphasized parts of the record that contradicted Nurse Palmer's findings. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999) (explaining that the ALJ may reject treating physician's opinion if contradictory medical evidence exists and ALJ explains reasons for so doing). The ALJ summarized that the record indicated that "attention and concentration were good

9

while on medications. . . her thought process was organized and goal-directed, and she had good memory, as well as normal mood and affect, normal behavior, and normal thought content." (AR 21,25.) As such, substantial evidence supports the ALJ's decision regarding Nurse Palmer's medical opinion.

Along the same lines, Plaintiff also seemingly argues that the ALJ erred in finding that the state agency expert physicians and psychologist were not persuasive. (*See* Pl.'s Moving Br. 21-25.) To be sure, the ALJ actually provided *more* limitations than the state agency physicians called for. The Court, therefore, dismisses this argument.

Considering the record and the ALJ's written opinion as a whole, the Court finds substantial evidence that Plaintiff can perform sedentary work even with her physical limitations. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019).

### D. The ALJ Did Not Err in Finding Plaintiff's Boyfriend's and Ex-Husband's Testimony Less Persuasive

Finally, Plaintiff argues that the ALJ failed to properly consider both her boyfriend's sworn testimony and the third-party function report from her ex-husband. (Pl.'s Moving Br. 14-15.) Specifically, Plaintiff contends that the ALJ failed to properly weigh the credibility of this testimony. (*Id.*)

Plaintiff's boyfriend testified that Plaintiff is often in a manic state, she gets distracted easily and is overwhelmed, and she is unable to wake up in the morning and take care of her children. (AR 70-76.) Likewise, in a function report, Plaintiff's ex-husband stated that he helped the claimant with daily activities including personal care and care for their children and that she got overwhelmed if she went shopping. (*Id.*)

Again, contrary to Plaintiff's assertion, a plain reading of the written decision reveals that the ALJ did consider the testimony of Plaintiff's boyfriend and ex-husband but found both witnesses' statements "not entirely consistent with the medical evidence and other evidence in the

record." (AR 23.) An ALJ may discount a layperson's statement based on a finding that the statement is inconsistent with the medical evidence. *See Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 122 (3d Cir. 2020) ("The ALJ discounted [the plaintiff's] mother's reports because they were inconsistent with the previously discussed objective medical evidence and medical opinions. This reason was sufficient by itself to support the ALJ's decision."). Here, the ALJ found that the medical evidence painted a different picture. For example, the ALJ noted that Plaintiff's records from Ocean Mental Health Services on December 22, 2017, just several days after her alleged disability onset date, indicates Plaintiff was "oriented," "cooperative," and had appropriate and normal affect. (AR 416-17.) Moreover, as discussed above, the record indicates that (1) Plaintiff's diagnosis of narcolepsy was only a rule-out diagnosis and, (2) Plaintiff failed to comply with treatment for her sleep apnea. *See Thomas v. Comm'r of Soc. Sec.*, No. 12-6251, 2013 WL 6904071, at *5 (D.N.J. Dec. 31, 2013) ("Failure to follow treatment undermines [Plaintiff's] credibility."). The Court concludes that there is substantial evidence in the record to support the ALJ's finding that Plaintiff's boyfriend and ex-husband's statements are inconsistent with the medical records.

Based on its review of the ALJ's decision and its analysis of the specific records, this Court finds substantial evidence supports the ALJ's determination that Plaintiff is not disabled.

IV. **CONCLUSION**

For the foregoing reasons, the Court affirms the decision of the ALJ. An Order consistent with this Memorandum Opinion will be entered.

*[signature]*

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE